# UTILITY EQUIPMENT, INC.,
*Appellant - Cross-Respondent,*

*v.*

# MORBARK INDUSTRIES, INC.,
*Respondent - Cross-Appellant.*

## (A8411-06465; CA A41674)

763 P2d 164

Christopher James, Portland, argued the cause and filed the briefs for appellant - cross-respondent. With him on the briefs were Richard A. Weill, and Christopher James, P.C., Portland.

Linda Seluzicki, Portland, argued the cause and filed the brief for respondent - cross-appellant. With her on the brief were Rick T. Haselton, and Lindsay, Hart, Neil & Weigler, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff brought this action to recover labor costs incurred in replacing a defective part in tree chippers manufactured by defendant. The trial court granted partial summary judgment for defendant on plaintiff's claims for breach of implied warranties, negligence and statutory damages pursuant to the National Traffic Motor Vehicle Safety Act, 15 USC § 1381, *et seq.* After trial on the remaining claims, the jury found against plaintiff on its claims for breach of express warranty and *quantum meruit* but found in favor on its indemnity claim. Plaintiff assigns as error the trial court's granting of defendant's motion for partial summary judgment, failure to direct a verdict on plaintiff's claim for breach of an express warranty and the instruction of the jury.[1] We affirm.

Plaintiff is an Oregon company that purchases heavy equipment for resale or lease. Defendant, a Michigan corporation, manufactures and sells heavy equipment, including the "Eeger Beever Chipper" (chipper), a portable tree chipper which grinds and mulches trees and brush. In November, 1981, they orally agreed that plaintiff would act as defendant's exclusive distributor for the chipper in Oregon and part of Washington. Shortly after the oral agreement was reached, defendant sent plaintiff a warranty information packet regarding the chipper. The packet included a written warranty:

> "Morbark Industries, hereinafter referred to as 'Manufacturer' warrants each new Eeger Beever Chipper to be free from defects in material and workmanship under normal use and service for a period of one (1) year or 2,000 hours, whichever comes first, after the date of delivery to the original retail purchaser. Manufacturer will at its option replace or repair at a point designated by the Manufacturer, any part or parts which shall appear, to the satisfaction of the Manufacturer upon inspection, to have been defective in material or workmanship."

---

[1] Defendant cross-appeals and argues that the trial court should have directed a verdict in its favor on plaintiff's indemnity claim. Defendant requested that its cross-appeal be treated as "withdrawn" if plaintiff failed to prevail. In view of that request, we do not consider the arguments on cross-appeal, but we do affirm on the cross-appeal and award costs.

The packet also contained a separate explanation[2] of the warranty coverage:

"As stated in our Warranty (WO 40477), Morbark does not pay warranty labor—however, about 90% of the claims we receive include labor and travel expenses. This inclusion only delays processing your claims.

"In cases where a major manufacturing defect results in excessive expense being incurred by your Service Department, Morbark Industries will reimburse you for all or part of this expense, *IF WRITTEN APPROVAL* is obtained by the Morbark Product Manager responsible for that particular product. This written approval must then accompany your warranty claim being submitted for reimbursement." (Emphasis in original.)

In February, 1982, after purchasing two chippers, plaintiff received a service bulletin regarding "warranty regulations" which specifically stated that labor costs were not included in the warranty. Further, there was evidence that plaintiff's president knew in early 1982 that warranty labor was not covered.

On April 8, 1983, defendant issued a safety alert to its customers, advising them that several chippers had developed cracks in their fan blades or chipper discs, creating a dangerous condition, and requesting that owners inspect their machines for cracks. For those units which showed signs of cracking, defendant offered to perform a limited "retrofit" which did not require replacement of the entire chipper disc. The alert stated that defendant would either pay for the cost of the retrofit or provide service personnel to perform the retrofit at no cost to the customer.

On May 11, 1983, defendant issued a safety alert update which informed dealers and owners of the chippers that, instead of attempting to retrofit chippers, defendant had decided to provide a new chipper disc assembly at no charge to owners of chipper units, including owners of units that were outside the one-year warranty period. It was noted, however, that the replacement program did not include the cost of labor to perform the disc replacement. Customers were advised that

---

[2] Although this statement was included in the warranty information given to defendant's customers, its effect is unclear, because its specific reference is to a warranty "(WO 40477)," different from the one included in the packet.

they could either perform the replacement themselves, using instructions supplied by defendant, or pay a dealer to perform the labor. Defendant informed plaintiff that the amount charged for labor was to be negotiated between plaintiff and its customers. Because of numerous customer complaints, plaintiff performed numerous disc replacements free of charge. Plaintiff then submitted warranty claims to defendant seeking reimbursement. In addition, plaintiff submitted claims for customer labor costs in cases where the customer had performed the replacement. Defendent rejected the claims, and plaintiff filed this action.

Plaintiff assigns error to the trial court's granting of a partial summary judgment for defendant on plaintiff's second (implied warranty of merchantability), third (implied warranty of fitness for a particular purpose), fourth (negligence) and seventh (National Traffic and Motor Vehicle Safety Act) claims.

■ The trial court dismissed plaintiff's implied warranty and negligence claims, holding that the language of the written warranty expressly excludes them.[3] The warranty states: "[T]his Warranty is expressly in lieu of any other Warranties, express or implied, including any implied Warranty of merchantability or fitness for a particular purpose and of any non-contractual liabilities including product liabilities, based upon negligence or strict liability." Plaintiff argues that the court's holding was error, because applying the limitations as a bar to plaintiff's action was inconsistent with the court's later refusal to rely solely on the language of the written warranty on the issue of whether defendant was responsible for labor costs. However, the issue of whether the written warranty covers labor costs is separate from whether the warranty disclaims coverage for implied warranties and negligence claims. Further, in contrast to the labor cost issue, the only evidence of the parties' agreement regarding the exclusion of implied warranties or negligence is the language of the contract.

---

[3] Plaintiff contends that its complaint for breach of an express warranty was not based on the written warranty, but rather on oral representations that defendant made to plaintiff and that the trial court on summary judgment applied a warranty that it did not plead. However, plaintiff neither argues on appeal that this is a reviewable error nor provides us with a legal theory as to why it was error. Additionally, in its response to defendant's motion for summary judgment, plaintiff argues that, if any warranty was applicable to its claim, the written warranty was.

Accordingly, we hold that there was no inconsistency and that the trial court did not err in dismissing plaintiff's claims on the express limitations and disclaimers in the written warranty.

■ Plaintiff also argues that the court erred in granting partial summary judgment, because the issue of whether the written warranty applies when a product has been recalled was a question of fact for the jury to decide. We disagree. There is nothing in the language of the written warranty which indicates that it does not apply in the event of a product recall, and plaintiff offers no evidence of any other agreement which defeats warranty coverage during a product recall. The trial court did not err in granting partial summary judgment and in dismissing plaintiff's claims for implied warranties and negligence.

■ Plaintiff also contends that the trial court improperly granted summary judgment on the claim for statutory damages pursuant to the National Traffic and Motor Vehicle Safety Act, 15 USC § 1381, *et seq,* which provides a statutory remedy for defects in motor vehicles which relate to motor vehicle safety. The chipper is not a "motor vehicle," defined by the act:

> "[A]ny vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads and highways, except any vehicle operated exclusively on a rail or rails." 15 USC § 1391(3).

The chipper is not "manufactured primarily for use on the public streets," and the application of the act in this instance would not be consistent with the legislative purpose of the act which is to promote vehicular safety.

■ Plaintiff's next assignment is that the trial court erred in failing to direct a verdict for plaintiff on its express written warranty claim and in failing specifically to instruct the jury that the express written warranty included labor costs.[4] A directed verdict and the instruction would have been

---

[4] Plaintiff also argues that the trial court erred in not instructing the jury that the parties agreed that the written warranty applied to plaintiff and plaintiff's customers. We can discern no such agreement from the record. Accordingly, the trial court did not err.

proper only if the terms of the written warranty unambiguously provided coverage for the costs of plaintiff's labor. The pertinent language of the warranty provides:

> "Manufacturer will at its option *replace or repair* at a point designated by the manufacturer, any part or parts which shall appear, to the satisfaction of the Manufacturer upon inspection, to have been defective in material or workmanship." (Emphasis supplied.)

That language does not expressly allow for labor costs incurred in replacing the defective chipper disc. Rather, it is ambiguous and, when it is considered with the other evidence on this issue, its meaning is a question of fact for the jury to decide. *May v. Chicago Insurance Co.,* 260 Or 285, 490 P2d 150 (1971); *Chambers v. School Dist. No. 40,* 22 Or App 463, 540 P2d 1026, *rev den* (1975).

■ Plaintiff argues, alternatively, that the court should have directed a verdict for it, because the warranty affords coverage for the costs of labor involving major manufacturing defects, and defendant admitted that the chipper disc problem was a "major manufacturing defect." The pertinent provision in the warranty packet states:

> "In cases where a major manufacturing defect results in excessive expense being incurred by your Service Department, Morbark Industries will reimburse you for all or part of this expense, *IF WRITTEN APPROVAL* is obtained by the Morbark Product Manager responsible for that particular product. This written approval must then accompany your warranty claim being submitted for reimbursement." (Emphasis in original.)

Plaintiff did not offer evidence of having obtained prior written approval before performing the work. Therefore, plaintiff is not entitled to coverage under the provision, and the trial court did not err in failing to direct a verdict.

The majority of plaintiff's remaining assignments of error address the trial court's jury instructions. We review for substantial error. ORS 19.125(2). *Collett v. Cascade Health Care,* 43 Or App 489, 603 P2d 369 (1979), *rev den* 288 Or 527 (1980). Plaintiff argues that the court erred in giving several instructions involving the definition of a contract, offer and

acceptance and contract interpretation.[5] There was evidence to support the giving of those instructions, and plaintiff fails to explain how it was prejudiced.

■        Plaintiff also contends that the instruction regarding its *quantum meruit* claim was defective, because it stated that plaintiff's services had to have been furnished at defendant's request or with defendant's acquiescence and knowledge, rather than stating that liability could arise if plaintiff acted at the implied request of defendant. Plaintiff contends, relying on *Hazelwood Water Dist. v. First Union Management,* 78 Or App 226, 715 P2d 498 (1986), that, by repairing the chipper, it supplied a service which was immediately necessary to satisfy the requirements of public decency, health and safety, which plaintiff argues is equivalent to acting at the implied request of defendant. Plaintiff misconstrues *Hazelwood,* which does not hold that supplying such services is equivalent to acting at the implied request of an individual. Rather, *Hazelwood* applies the principles of *Restatement Restitution,* §§ 112 and 115, and holds that one who discharges the legal obligation of another by supplying services which were immediately necessary to satisfy the requirements of public decency, health or safety is entitled to restitution from the individual whose obligation was discharged. Furthermore, the replacement of the discs was not immediately necessary to protect public health and safety. The owners of the chippers could choose not to operate the equipment or to have the necessary replacement done.

Plaintiff also argues, regarding the *quantum meruit* claim, that the trial court erred in failing to give this instruction:

> "You are instructed that one of the measures of damages in an action for restitution is the reasonable value of the services rendered by plaintiff in this action. The reasonable value of the costs incurred by plaintiff in replacement of the defective chipper disc assemblies."

---

[5] Plaintiff also objects to this instruction:

"The law allows a buyer and seller to agree to limit remedies recoverable for breach of warranty to repair or replacement of defective parts. Such an agreement is not unconscionable."

Plaintiff, however, did not except to the instruction. Accordingly, it is not properly before us for review. ORCP 59H.

Although the court did not give that exact instruction, it gave a comparable instruction, and we can detect no substantive difference between it and the requested instruction. The trial court did not err.

Plaintiff's final assignment concerns the trial court's instructions on plaintiff's claim for indemnity. Because the jury returned a verdict for plaintiff on the indemnity claim, there is no prejudice to plaintiff regardless of the merits of its contention.

Affirmed on appeal and on cross-appeal.